[No. 30355. Department One. March 11, 1948.]

EVERETT THEOBALD et al., Respondents, v. GUY
SATTERTHWAITE et al., Appellants.[1]

*Henderson, Carnahan & Thompson* and *Henry C. Perkins*,
for appellants.

*J. Peter P. Healy,* for respondents.

MALLERY, C. J.—From a judgment in favor of the plain-
tiffs, the defendants appeal.

[1]Reported in 190 P. (2d) 714.

Appellants Satterthwaite run a barbershop and beauty shop in the city of Tacoma under the name of the Crystal Palace Barber and Beauty Shop. It consists of a suite of three rooms, the back room being the barbershop, the middle room being the operating room of the beauty shop, and the room facing the outside being a reception room.

No attendant was kept in the reception room, and the interior of it was visible to outsiders through a glass door. Outsiders could not see into the operating room, nor could persons in the operating room see into the reception room. There was a sign in a conspicuous place in the shop which read: "Not responsible for hats, coats and purses."

The respondent Mae Theobald had patronized the beauty shop on a number of occasions previous to the day in question and knew the arrangement of the rooms. On a previous occasion, she had inquired of appellant Helen Satterthwaite if the reception room was a safe place to leave her coat and had been assured that it was safe. Nothing had been stolen from the reception room in twenty years of operation, and the hooks in that room were the only places provided for customers on which to hang their wraps. There was no bell or warning device on the door that sounded when it was opened. A thief could see into the reception room and, if a garment hung there, could open the door, take it off the hook, and leave without being seen from the operating room.

On December 24, 1946, the respondent Mae Theobald came into the beauty shop by appointment to get a permanent wave. She sat in the reception room with her fur coat on until the appellant Helen Satterthwaite invited her into the operating room. Whereupon, she removed her coat, as was natural and expected for the period while receiving her permanent wave. She hung it on a hook provided for wraps in the reception room. Neither of the appellants was aware that she had worn her fur coat on that day. When appellant Helen Satterthwaite had finished the work on respondent's hair, respondent went into the reception room to get her coat and found that it had been stolen. An alarm was given, and the police were called, but to no avail. She valued the coat at three hundred dollars, for which amount the lower

court gave her judgment upon the theory that the appellants were bailees of the coat and had been negligent in caring for it because of having furnished an unsafe place to leave it.

■ The appellants contend that they are not liable because there was no bailment. Respondent contends that there was a bailment and relies upon the rule in *Bunnell v. Stern,* 122 N. Y. 539, 25 N. E. 910, 10 L. R. A. 481, 19 Am. St. 519. In that case, a lady had gone to a clothing store to buy a cloak. In order to try on a new garment, she took off her cloak and laid it down in the presence of store attendants some distance away from the mirror she used in her fitting. Of this, the store employees had knowledge. After her fitting, she returned for her coat and found it gone. The court said:

"Under these circumstances we think that it became their duty to exercise some care for the plaintiff's cloak, because she had laid it aside on their invitation and *with their knowledge* and, without question or notice from them, had put it in the only place that she could." (Italics ours.)

One of the cases discussed by the court in *Bunnell v. Stern, supra,* is *Carpenter v. Taylor,* 1 Hilt. (N. Y.) 193, which the court said was not in point and distinguished it in this language:

"In *Carpenter v. Taylor,* the plaintiff entered the saloon of a hotel to get refreshments between twelve and one o'clock at night and when he went out the place was being closed. He left his opera-glass behind, but it did not appear where, and the next morning when he called for it, it could not be found. *As it did not appear that the defendant or any of his servants ever received, or even saw the glass,* it was properly held that he was not responsible for its loss." (Italics ours.)

Thus, in the case relied on by respondent, knowledge of the bailee's possession was held to be an essential factor to the existence of a bailment. Since in the instant case, the appellants were unaware of the presence of the fur coat, this element of knowledge brings them under the rule of *Carpenter v. Taylor, supra,* rather than under that of *Bunnell v. Stern* upon which respondent relies.

■ However, we think there is another and better ground upon which the appellant must prevail. That is that there was no change of possession or delivery in this case. In defining bailment, 6 Am. Jur. 140 says: "In its broadest sense it has been said to include any *delivery* of personal property in trust for a lawful purpose." While we are not inclined to view the element of delivery in any technical sense, still we think there can be no delivery unless there is a change of possession of an article from one person to another.

■ Where property is stolen, the loss will lie where it falls unless the owner can prove that it was due to the negligent act of another who had a duty of care with regard to it. The duty of care falls upon the bailee because he possesses the article and has the power of custody or control over it. This situation will not arise unless the owner parts with control over the article as a result of the bailee coming into possession of it.

■ One who takes off a garment and deposits it in his own presence, as one would do in a restaurant, retains the power of surveillance and control in himself, and the burden of care is not transferred with regard to such an article because the operators of the restaurant have not knowingly received the exclusive possession and dominion over it. In the instant case, the respondent may not have had an adequate opportunity for surveillance, nevertheless, she had not transferred control of it to the appellants by a delivery, and they were unaware that a valuable fur coat had been left in the reception room.

We therefore agree with appellants' contention that there was no bailment in this case, because there was no change of possession of the coat and hence no delivery. It follows that, in the absence of a bailment, the appellants owed the respondent no duty of care and were not negligent in failing to guard it effectively.

The judgment is reversed.

MILLARD, SIMPSON, SCHWELLENBACH, and HILL, JJ., concur.

———

April 14, 1948. Petition for rehearing denied.