T. R. Booth & Co., Inc., a Corporation, Plaintiff-Appellee, v. Alfred J. Loy, d/b/a Arrow Moving & Storage Co., Defendant-Appellant.

Gen. No. 67–179.

Second District.

October 15, 1968.

Rehearing denied November 14, 1968.

Snyder, Clarke, Dalziel, Holmquist & Johnson, of Waukegan, for appellant.

■■■■■■■■■■■■■■

John F. Grady, of Waukegan, for appellee.

MR. JUSTICE MORAN delivered the opinion of the court.

This is an appeal from a bench trial before a magistrate wherein the plaintiff, T. R. Booth & Co., Inc., recovered a judgment, after setoff, in the sum of $8,199.16 against the defendant, Alfred J. Loy, d/b/a Arrow Moving & Storage Company.

The plaintiff is an importer of overseas merchandise consisting of tape recorders, radios, amplifiers, various electronics and musical instruments. The defendant operated a one-story building as a warehouse. At the time in question, two companies were already tenants of the building, one bagging concrete mix and the other assembling houses. The building was surrounded by a fence with a guard at the gate and was locked other than during regular business hours.

At the end of May, 1965, Gerald Booth, President of the plaintiff corporation and referred to as plaintiff herein, had a conversation with the defendant. In the conversation the plaintiff stated that he needed an area to place merchandise when it arrived from overseas and to prepare such merchandise for shipment to his customers, and occasional help in doing so. The defendant, in this conversation, stated that he could furnish the space needed at the rate of 12¢ per square foot, but would charge extra for any labor furnished. This above is the total basis for the alleged oral contract of bailment between the parties as disclosed by the plaintiff in the record.

June 4, 1965, the plaintiff moved in merchandise; however, during the period in question, the great bulk of personalty stored was owned by a corporation other than the plaintiff herein. From this date until December 1, 1966, the plaintiff not only had a key to the premises but

had unrestricted access to the building at all times regardless of business hours. From June, 1965, until July, 1966, except for April, 1966, he was on the premises on the average of three to four times a week. While there, he would supervise the packing, unpacking and shipping of materials to his customers; he would bring in additional merchandise by himself as well as having it delivered by commercial carrier; he personally took inventory of his stock from time to time and he would receive customers' returned merchandise for repairs. The plaintiff prepared all of his own bills of lading and shipped materials in and out of the warehouse as suited his needs. At no time was the defendant given any document by the plaintiff indicating the amount or type of merchandise located on the premises nor was he allowed to examine the contents of any of the boxes. Conversely, the defendant, at no time gave the plaintiff an itemization of the articles stored. It is to be further noted that a partner of the plaintiff was allowed access to the articles when the plaintiff was not present.

On Thursday, December 1, 1966, the plaintiff went to the warehouse and found the entrance door open. There was no guard in attendance nor were any of defendant's employees present. Upon entering, plaintiff found boxes, in which merchandise had been stored, scattered about and, in most cases, empty. Thereupon, the plaintiff brought a one-count complaint alleging a bailment relationship between the parties. One of the paragraphs of the complaint stated that "the merchandise was either lost or destroyed as a result of the defendant's negligence in storing the same, or, in the alternative, the defendant has converted the goods to his own use or the use of another."

The only witness for the plaintiff was Gerald Booth who testified to the above set of facts. He further testified to two items of damage. The first was his loss in the sum of $6,038.95. The only evidence to substantiate

this claim was a copy of a letter that he had sent to his attorney which purported to be a compilation of his inventory as taken from voluminous records which were present in court according to plaintiff's testimony. The second item of damage in the amount of $2,454.64 consisted of missing merchandise which his customers claimed was returned to the plaintiff for repairs. The only evidence to substantiate the second item of damage was plaintiff's testimony of what his customers told him they had lost. The customers were not in court and therefore did not testify directly as to their losses.

The magistrate found the relationship of bailor-bailee existed between the parties. He then accepted plaintiff's evidence on damage and entered judgment for the full amount of both claims less a setoff for rent due to the defendant.

The defendant contends on this appeal (1) that the relationship was not one of bailment and (2) that plaintiff's evidence as to damages was incompetent.

■■■ "Bailment is the delivery of goods for some purpose, upon a contract, express or implied, that after the purpose has been fulfilled they shall be re-delivered to the bailor, or otherwise dealt with according to his directions, or kept till he re-claims them." Knapp, Stout & Co. v. McCaffrey, 178 Ill 107, 112, 52 NE 898 (1899).

■■■ Among the necessary elements of a bailment is that there must be an actual delivery or transfer of possession of the property by the bailor to the bailee, Wall v. Airport Parking Co. of Chicago, 88 Ill App2d 108, 113, 232 NE2d 38 (1967); Maryland Cas. Co. v. Holmsgaard, 10 Ill App2d 1, 9, 133 NE2d 910 (1956); North v. City of Rockford, 237 Ill App 305, 307 (1925); possession of property by a bailee is essential to a common-law bailment, Marsh v. American Locker Co., 7 NJ Super 81, 72 A2d 343, 344–345 (1950); whether personal property left upon another's premises from which either a bailment or another relationship might

be predicated, the test is whether or not the person leaving the property has made such a delivery as to amount to a relinquishment, for the duration of the relation, of his exclusive possession, control and dominion over the property, so that the person upon whose premises it is left can exclude, within the limits of the agreement, the possession of all others. Zweeres v. Thibault, 112 Vt 264, 23 A2d 529, 532 (1942).

■ ■ We are of the opinion that the plaintiff failed to prove the necessary elements of his cause of action in that at no time did the corporation transfer the exclusive possession of the articles in question to the defendant, nor did the defendant know, at any time, what the specific articles were that were entrusted to him. As can be seen by the actions of the plaintiff, he retained possession of the articles in order that he might transfer the same to his customers at will as well as receive additional items as needed, all without either the acquiescence or knowledge of the defendant. The fact that the defendant held himself out to be a warehouseman does not alter the situation because the physical structure of the place wherein an article is stored is not determinative of a bailment relationship where there has been no delivery of control from the bailee to the bailor. Taylor v. Philadelphia Parking Authority, 398 Pa 9, 156 A2d 525, 527 (1959).

■ Where there is no delivery and relinquishment of exclusive possession by the bailor, and his control and dominion over the goods is dependent in no degree upon the cooperation of the owner of the premises, and his access thereto is in no way subject to the owners control, it is generally held that he is a tenant or lessee of the space upon the premises where the goods are kept. Zweeres v. Thibault, supra, 532.

We are of the opinion that the relationship between the parties hereto was that of lessor-lessee. The actions of the plaintiff constituted nothing more than the leasing of space at this location in order that he might conduct

his business as he desired. Having failed to establish either the delivery and acceptance of exclusive possession in the defendant, or defendant's specific knowledge of articles entrusted to him, plaintiff has failed to establish the necessary elements of his cause of action. Having reached this conclusion it is unnecessary to pass upon the question of damages.

Further, since the alleged negligence of the defendant is bottomed upon a presumption arising out of a bailment relationship there is no need to consider the negligence allegation. Consequently, the judgment of the trial court must be reversed.

Judgment reversed.

ABRAHAMSON, P. J. and DAVIS, J., concur.